## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE

AMBER LANCASTER, BRENDA GEIGER, IESHA MARIE CRESPO, MONICA LEIGH, SANDRA VALENCIA, and TIFFANY TOTH GRAY,

Index No. _____

*Plaintiffs*,

- against -

**COMPLAINT**

LA FOGATA, INC.,

(Jury Trial Demanded)

*Defendant*.

Plaintiffs AMBER LANCASTER, BRENDA GEIGER, IESHA MARIE CRESPO, MONICA LEIGH, SANDRA VALENCIA, and TIFFANY TOTH GRAY (collectively, "Plaintiffs"), file this Complaint against LA FOGATA, INC. ("La Fogata" or Defendant") respectfully allege as follows:

### BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their bar and nightclub, La Fogata Bar and Grill, located in Cordova, Tennessee (hereinafter the "Club").

2.     As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Violation of each Plaintiff's Right of Publicity Under the Tennessee Personal Rights Protection Act of 1984 ("TRPA" or the "ELVIS Act"), T.C.A. §§ 47-25-1108; d) Violation of each Plaintiff's Common Law Right of Publicity; e) Violation of the Tennessee Consumer Protection Act of 1977, T.C.A. 47-18-101 to

47-18-5706; f) defamation; and g) various common law torts, including conversion.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, defendant La Fogata is a corporation formed under the laws of the state of Tennessee, with its principal place of business located at 1105 N Houston Levee Rd, Cordova, Tennessee.  Upon information and believe, La Fogata owns and operates the Club, which is located at the same address, 1105 N Houston Levee Rd, Cordova, Tennessee.

8.      Venue is proper in the United States District Court for the Western District of Tennessee because Defendant's principal place of business is located in this District.

9.      A significant portion of the alleged causes of action arose and accrued in Cordova, Tennessee, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Cordova, Tennessee.

## PARTIES

*Plaintiffs*

10.      Plaintiff AMBER LANCASTER is a well-known professional model and a resident of Los Angeles County, California.

11.    Plaintiff BRENDA GEIGER is a well-known professional model and a resident of Onondaga County, New York.

12.    Plaintiff IESHA MARIE CRESPO is a well-known professional model and a resident of

13.    Plaintiff MONICA LEIGH is a well-known professional model and a resident of Suffolk County, New York.

14.    Plaintiff SANDRA VALENCIA is a well-known professional model a resident and citizen of Medellin, Colombia.

15.    Plaintiff TIFFANY TOTH GRAY is a well-known professional model and a resident of Orange County, California.

***Defendant***

16.    Defendant La Fogata is a corporation formed under the laws of the state of Tennessee and registered to conduct business in Tennessee. During times relevant to this action, La Fogata owned and operated the Club.

17.    Service of process may be perfected upon La Fogata by serving the registered agent for service of process, Alis Escalon, who can be located at Suite 109, 1105 N Houston Levee Rd, Cordova, Tennessee 38018-3620.

## FACTUAL ALLEGATIONS

18.    Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

19.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and

maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

20.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

21.     In the case of each Plaintiff, this apparent claim was false.

22.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

23.     No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

24.     Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

25.     Amber Lancaster joined The Price is Right in 2008. She was crowned Miss Washington Teen USA, and went to join the Sea Gals, the Seattle Seahawks famed cheerleading squad. Following five years on the squad, she moved to Los Angeles to pursue her entertainment career. In addition to her role on The Price is Right, Amber co-starred as Jenny Swanson on MTV's The Hard Times of RJ Berger. She has appeared on episodes of Days of Our Lives, CSI: Miami, The Bold and the Beautiful, Community, and Entourage. In addition, she has appeared as herself on Attack of the Show, The Scream Awards, and The Best Damn Sports Show Period. She also has appeared in the feature film Redline. Amber has been featured in numerous magazine spreads and fashion features in Maxim, US Weekly, People, Stylewatch, Life & Style and Star. She has also been featured as part of Maxim's annual "Hot 100" list. She has 489,000 Instagram followers.

26.

27.    That we know of, Lancaster is depicted in the photo in Exhibit "A" to promote the Club on its social media pages. This Image was intentionally altered to make it appear that Lancaster was either an employee working at the Club, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

28.    Lancaster has never been employed at the Club, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

29.    Brenda Geiger is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as Show, Maxim and Raw, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

30.    That we know of, Geiger is depicted in the photo in Exhibit "B" to promote the Club on its social media pages. This Image was intentionally altered to make it appear that Geiger was either an employee working at the Club, that she endorsed same, or that she was otherwise associated or affiliated with same.

31.    Geiger has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

32.    Iesha Marie Crespo is an American model and video star with combined social media following of nearly a million. Crespo has been featured in a number of magazines and has the covers of Models Latina March 2015 and Shock magazine. Crespo has also appeared in several catalogues such as Raw and Uncut and appeared in a dozen music videos for artists such

as Rick Ross and French Montana.

33.     That we know of, Crespo is depicted in the photo in Exhibit "C" to promote the Club on its social media pages. This Image was intentionally altered to make it appear that Crespo was either an employee working at the Club, that she endorsed same, or that she was otherwise associated or affiliated with same.

34.     Crespo has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

35.     Monica Leigh Burkhardt worked as a bartender and dental assistant prior to being encouraged by her childhood friend and fellow Playboy Playmate, Courtney Culkin, to try out. She has modeled for the famous men's magazine in various newsstand special editions (she was featured on the cover of "Playboy's College Girls" in September 2005). She was the Playboy Cyber Girl of the Week for August 29, 2005 and the Cyber Girl of the Month for December, 2005. Burkhardt was subsequently named Cyber Girl of the Year for 2006. Moreover, she was the Playmate of the Month in the March, 2006 issue of Playboy and graced the cover of the August, 2006 issue. Burkhardt has appeared in several Playboy videos and on a handful of episodes of the reality TV series, The Girls Next Door (2005). She has acting roles in the movies, The Duel (2006), The Pool Boys (2009), The Gentleman (2007) and Road Raiders (2000). Monica has popped up as an extra not only in Spider-Man 3 (2007), but also on episodes of both Entourage (2004) and CSI: Miami (2002).

36.     That we know of, Leigh is depicted in the photo in Exhibit "D" to promote the Club on its social media pages. This Image was intentionally altered to make it appear that Leigh was either an employee working at the Club, that she endorsed same, or that she was otherwise associated or affiliated with same.

37.     Leigh has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant,

has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

38.    Sandra Valencia is, and at all times relevant to this action was, a successful professional model with numerous accomplishments. She is regarded as one of the top models in her home country of Colombia. Valencia has modeled in Ecuador, Peru, The Dominican Republic, Mexico and Venezuela. She has worked with clients such as Diesel, Americanino, Leonisa, Chevignon, and Onde de Mar, and is the contract face of Bésame Lingerie. She currently has 151,000 Instagram followers and over 72,300 thousand X (formerly known as Twitter) followers.

39.    That we know of, Valencia is depicted in the photo in Exhibit "E" to promote the Club on its social media pages. This Image was intentionally altered to make it appear that Valencia was either an employee working at the Club, that she endorsed same, or that she was otherwise associated or affiliated with same.

40.    Valencia has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

41.    Tiffany Gray (a/k/a Tiffany Toth) Gray is an extremely successful model that takes great pride in holding the prestigious title of a Playboy Playmate. Gray was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Muscle & Fitness, Guitar World, Ripped, Seventeen, Pump, and Maxim, but has also posed for various catalogs. Gray has even appeared on television shows such as Tosh.O and The Daily Habit. She has booked jobs shooting for lingerie companies such as Shirley of Hollywood, Seven Til Midnight, Elegant Moments, and Jvalentine. She is also a real estate agent in Southern California and part owner of Sugar Taco, a plant-based restaurant located in Los Angeles. Gray currently has over 3.7 million Facebook

followers, 1.2 million Instagram followers, and over 368,700 X (formerly known as Twitter) followers.

42.    That we know of, Toth is depicted in the photo in Exhibit "F" to promote the Club on its social media pages. This Image was intentionally altered to make it appear that Toth was either an employee working at the Club, that she endorsed same, or that she was otherwise associated or affiliated with same.

43.    Toth has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activities and Misappropriation***

44.    Defendant operates (or operated, during the relevant time period,) the Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

45.    Defendant owns, operates, and controls the Club's social media accounts, including its Facebook, Twitter, and Instagram accounts.

46.    Defendant used the Club's Facebook, Twitter, and Instagram accounts to promote the Clubs, and to attract patrons.

47.    Defendant did this for its own commercial and financial benefit.

48.    Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at the Club, endorsed the Club, or was otherwise associated or affiliated with the Club.

49.    Defendant used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed the Club to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business

revenue, profits, proceeds, and income.

50.     Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by the Club, and at no point have any of the Plaintiffs ever endorsed the Club or otherwise been affiliated or associated with the Club.

51.     All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

52.     Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

53.     Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

### Standard Business Practices in the Modeling Industry

54.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

55.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

56.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

### Defendant's Misappropriation of Plaintiffs' Images

57.     Defendant was aware that, by using Plaintiffs' Images, it was violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed the Club.

58.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed

relating to the commercialization of their Images.

59.    In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with the Club.

60.    At no point was any Plaintiff ever contacted by Defendant, or any representative of Defendant, to request the use of any of Plaintiff's Images.

61.    Defendant never obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

62.    Defendant never paid any Plaintiff for its use of her Images on any promotional materials, including the Club's website, Twitter, Facebook, or Instagram accounts.

63.    Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## <u>1 CAUSE OF ACTION</u>
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

64.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

65.    Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein

66.    Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment or endorsed Defendant's business. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

67.    Thus, this was done in furtherance of Defendant's commercial benefit.

68.    Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact

demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

69.     Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

70.     As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant's consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

71.     Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

72.     Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, it used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant's establishment.

73.     Defendant knew that its use of P Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

74.     Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's business and the goods and services provided by Defendant.

75.     As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

76.     Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

77.     Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

78.     WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## **2 CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising)**

79.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

80.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, et seq. applies to Defendant and protects Plaintiffs from the conduct described herein. Specifically, the Lanham Act prohibits a

party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

81.    Defendant used Plaintiffs' image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Defendant's establishment, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use their image in order to advertise, promote, and market the Club.

82.    Defendant's use of Plaintiffs' image, likeness and/or identity to advertise, promote and market the Club was false and misleading.

83.    Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with the Club or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market the Club's events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

84.    Defendant's false advertising described above have the capacity or tendency to confuse consumers, including actual and prospective patrons of Defendant's establishment, as to the general quality of attendees and participants of Defendant's establishment and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with the Club, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market the Club.

85.    Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with the Club, or consented to or authorized Defendant's usage of their image in order to advertise, promote, and market the Club.

86.     Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to attend the Club and had a material effect and impact on the decision of patrons to attend the Club.

87.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendant's businesses interests by, among other things, promoting Defendant's establishment and their activities and attracting clientele to Defendant's establishment.

88.     Defendant knew or should have known that its unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

89.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

90.     Defendant's wrongful conduct as described herein was willful.

91.     As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

92.     Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

93.     The method and manner in which Defendant used the image of Plaintiffs further evinces that Defendant were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their image to advertise the Club.

94.     Defendant has caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendant's establishment.

95.     Defendant's unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

## 3 CAUSE OF ACTION

**(Violation of the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to
47-25-1108 "TRPA" or "ELVIS Act")**

96.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above,
and incorporate the same by reference as though fully set forth herein.

97.    Each Plaintiff has identified herself in each of Plaintiffs' Images as set forth in the
exhibits attached to this complaint and each Plaintiff alleges upon information and belief that her
image is readily identifiable in each photograph.

98.    Plaintiffs' Images have not been copyrighted under federal law.

99.    Plaintiffs have a right to control the commercial use of their names, images, and
likenesses. Under the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101
to 47-25-1108 "TRPA" or "ELVIS Act" the unauthorized use of a person's image or likeness for
purposes of advertising goods or services or fundraising/soliciting donations, among other
purposes is unlawful.

100.    Defendant misappropriated Plaintiffs' likenesses by publishing their image and
likeness on Defendant's website or related social media accounts as part of Defendant's
advertising campaign.

101.    Defendant's use and publication of Plaintiffs' Images as set forth in the exhibits
attached to this complaint was to advertise their establishment was for the purpose of advertising
goods or services.

102.    Plaintiffs are further informed and believe and hereon allege that discovery will
prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via
different mediums, after the initial date of the posting of their image and likeness and through the
filing of this complaint.

103.    Plaintiffs are informed and believe and hereon allege that Defendant's
republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or
promote a different product.

104.    Defendant published, performed, distributed, transmitted or otherwise made available to the public each Plaintiffs' image and likeness with knowledge that the use was unauthorized.

105.    Defendant knew or reasonably should have known that the use of Plaintiffs' Images was unauthorized.

106.    Defendant's use of Plaintiffs' photographs and likenesses did not occur in connection with the dissemination of news or information and was without a redeeming public interest or historical value or for purposes of comment, criticism, scholarship, satire, or parody.

107.    Defendant never obtained Plaintiffs' consent for the use of their images and likenesses.

108.    Defendant's use of each Plaintiffs' photographs and likenesses was willful and deliberate.

109.    As a direct and proximate result of Defendant's scheme to create the false impression that Plaintiffs were affiliated with and/or performed at Defendant's establishment, Defendant enjoyed increased revenues and profits.

110.    As a further direct and proximate result of Defendant's deliberate and willful conduct, Plaintiffs have suffered actual damages in an amount to be established at trial.

111.    Under the Elvis Act, Plaintiffs are entitled to injunctive relief, destruction of any materials created in violation of the law; actual damages, plus any profits that are attributable to the violation.

### 4 CAUSE OF ACTION
### (Common Law Right of Publicity)

112.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

113.    Defendant has appropriated each Plaintiff's likeness for Defendant's commercial purposes without authority or consent from Plaintiffs.

114.    Defendant misappropriated Plaintiffs' likenesses by publishing their image and

likeness on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

115.   Defendant's website and social media accounts were designed to advertise and attract business to Defendant and generate revenue for Defendant.

116.   Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

117.   Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant's republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

118.   Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

119.   Upon information and belief, Defendant's use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendant.

120.   At no point did any Defendant ever seek or receive permission or consent to use any Plaintiffs image and likeness for any purpose.

121.   Defendant was at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their image and likeness in any medium for any purpose.

122.   At no point did Defendant ever compensate Plaintiffs for its unauthorized use of their image and likeness.

123.   Plaintiffs have been damaged in amounts to be proved at trial.

## 5 CAUSE OF ACTION

**(Violation of the Tennessee Consumer Protection Act of 1977,
T.C.A. 47-18-101 to 47-18-570)**

124.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

125.    Defendant operated its website and social media accounts in order to promote Defendant's establishment, to attract clientele thereto, and to thereby generate revenue for Defendant.

126.    As such, Defendant's operation of the website and social media accounts, and their publication of image and likeness thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Tennessee.

127.    Defendant's publication and use Plaintiffs' image and likeness was in a manner that Plaintiffs gave consent for the use of their Images, and/or created the false impression were either strippers working at Defendant's establishment, endorsed the same, or were otherwise affiliated, associated, or connected with Defendant.

128.    As such, Defendant's intent in publishing Plaintiffs' image and likeness was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendant.

129.    Defendant thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of South Tennessee.

130.    Defendant's advertising practices offends the public policy of Tennessee insofar as it constitutes misappropriation of Plaintiffs' property rights in their own image and likeness, and invasion of Plaintiffs' privacy, for Defendant's commercial benefit.

131.    Defendant's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendant.

132.    Defendant's advertising practices cause injury to consumers by creating the false impression that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendant.

133.    There are no benefits to Defendant's advertising practices as set forth hereon except a benefit to Defendant's own commercial interests.

134.    As a result of Defendant's unauthorized and misleading publication of Plaintiffs' image and likeness on Defendant's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

135.    As a result of Defendant's unauthorized and misleading use of Plaintiffs' image and likeness, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
### (Defamation)

136.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

137.    As detailed throughout this Complaint, Defendant published and altered the image and likeness of Plaintiffs in order to promote their establishment to the general public and potential clientele.

138.    Defendant's publication of said image and likeness constitutes a representation that Plaintiffs was either employed by Defendant, that they endorsed Defendant, or that they had some affiliation with Defendant.

139.    None of these representations were true.

140.    In publishing Plaintiffs' Images, it was Defendant's intention to create a false impression to the general public that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendant.

141.    Defendant were at least negligent in publishing Plaintiffs' image and likeness because they knew, or should have known, that Plaintiffs were not employed by Defendant, had

no affiliation with Defendant, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

142.    In the alternative, Defendant published the image and likeness of Plaintiffs with actual malice because they knew – or reasonably should have known – that Plaintiffs were not employed by Defendant, had no affiliation with Defendant, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

143.    Despite Defendant's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for themselves.

144.    Defendant's publication of Plaintiffs' image and likeness constitutes defamation under Tennessee law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., worked for, endorsed, or was otherwise affiliated with Defendant's establishment which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

145.    Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Tennessee law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

146.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was working for or endorsing the business, an inference which Defendant's publication of the image and likeness support.

147.    Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under South Carolina law because, insofar as said publication falsely portrays each of the Plaintiffs Defendant's employee, it imputes unchastity to her.

148.    Defendant's publication of Plaintiffs' image and likeness caused Plaintiffs to

suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Negligence/Respondeat Superior)

149.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

150.    Plaintiffs are further informed and believe and hereon allege that Defendant maintains or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and nonconsensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

151.    Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

152.    Defendant owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

153.    Similarly, Defendant further owed a duty of care to Plaintiffs to ensure that their promotional and/or advertising materials and campaigns did not deceptively or falsely portray a connection, affiliation, or sponsorship between Plaintiffs and Defendant.

154.    Defendant breached its duty of care to Plaintiffs by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

155.    Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and New Jersey law, were not violated. Defendant breached their

duty of care to Plaintiffs by their negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

156.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Image was published without consent, authorization, or compensation, and done so in a false, misleading and/or deceptive manner.

157.    As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

**EIGTH CAUSE OF ACTION**
**(Conversion)**

158.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

159.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their image and likeness, and have property interests thereon.

160.    By the conduct detailed above, Defendant converted Plaintiffs' property rights in their image and likeness for their own use and financial gain image and likeness for its own use and financial gain.

161.    As a result of Defendant's unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**(Unjust Enrichment)**

162.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

163.    As set forth in detail above, Defendant published Plaintiffs' Images in order to promote the Defendant's establishment to the general public and potential clientele.

164.    Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at or endorsed the Defendant .

165.    Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

166.    Upon information and belief, Defendant did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

167.    Defendant has been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to their establishment.

168.    Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

169.    As such, Plaintiffs have been damaged in an amount to be determined

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

170.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

171.    Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

172.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

173.    Although Defendant has availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at or endorse their establishment, or are otherwise affiliated with their Defendant, Defendant has not compensated Plaintiffs.

174.    Plaintiffs are therefore entitled to reasonable compensation for Defendant's unauthorized use of their image and likeness.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Olga's Place's Night Club;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and S.C. Code Ann. § 39-5-10, *et seq*.

(e) For all damages available to Plaintiffs under the Tennessee Personal Rights Protection Act of 1984, T.C.A. §§ 47-25-1101 to 47-25-1108 "TRPA" or "ELVIS Act"**;**

(f) For all damages available to Plaintiffs under Tennessee Consumer Protection Act of 1977,T.C.A. 47-18-101 to 47-18-570;

(g) For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**/s/ Joe Bednarz, Jr.**
JOE BEDNARZ, JR., #018540
BEDNARZ & BEDNARZ
660 East Main Street
Hendersonville, TN 37075
(615) 256-0100
Attorneys for Plaintiffs